UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
REGINALD BOUDINOT, et al.,

                Plaintiffs,

       -against-                                           09 Civ. 10163 (LAK)
                                                           and consolidated cases

RALPH W. SHRADER, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

        Mark C. Kelly
        KELLY & HAZEN
        *Attorneys for Plaintiffs*

        Everett C. Johnson, Jr.
        J. Christian Word
        Sarah A. Greenfield
        LATHAM & WATKINS LLP
        *Attorneys for Defendants Ralph W. Shrader, CG Appleby, Samuel R. Strickland, Joseph E. Garner, Dennis Doughty, DeAnne M. Aguirre, Heather L. Burns, Mark J. Gerencser, Francis J. Henry, Christopher M. Kelly, David G. Knott, Daniel C. Lewis, Joseph W. Mahaffee, John D. Mayer, Patrick F. Peck, Horacio D. Rozanski, Douglas G. Swenson, Steven B. Wheeler, Gary D. Ahlquist, Martin J. Bollinger, Lloyd W. Howell, Jr., William C. Jackson, Pamela M. Lentz, Eric A. Spiegel, and Booz Allen Hamilton, Inc.*

LEWIS A. KAPLAN, *District Judge.*

In light of previous rulings, all that remains of these cases are (1) the ERISA claims of plaintiff Kocourek to the extent that they rest on alleged violations of the Shadow Stock Plan (the "SSP"),[1] and (2) counterclaims by certain of the defendants. Defendants Booz Allen Hamilton ("BAH") and others move for summary judgment dismissing Kocourek's remaining claims against them as well as for partial summary judgment on their counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. Defendants contend that plaintiff released his claims against them when he tendered his BAH shares in 2008. As a state court already has determined that the release was valid and released all of plaintiff's claims, defendants argue that plaintiff is collaterally estopped from relitigating the validity of the release in this Court. Moreover, defendants argue that, in bringing suit based on the claims he released, plaintiff breached his contract and the covenant of good faith and fair dealing. Finally, defendants contend that, if plaintiff is permitted to relitigate the validity of the release, he must return the money he received in exchange for his shares.

Kocourek argues that (1) the state court decided the effect of the release under state law, not ERISA, and that he therefore is not collaterally estopped from litigating its validity here, (2) he did not voluntarily and knowingly release his claims as required under ERISA, and (3) defendants may not recover attorneys' fees, even if they can prove their counterclaims.

For the reasons set forth below, the Court (1) grants defendants' motion for summary judgment dismissing Kocourek's remaining claims, but (2) denies it as to defendants' counterclaims.

---

[1] *Boudinot v. Shrader,* No. 09 Civ.10163 (LAK), 2012 WL 489215, at *11 (S.D.N.Y. Feb. 15, 2012) (hereinafter *Boudinot*)..

2

*Background*

Kocourek was an employee of BAH from 1987 through 2007, when he retired. During his employment, Kocourek received "shadow stock" units through BAH's SSP.[2] When he retired, he was paid $1,785,045 for his shadow stock units. On or about June 2008, Kocourek retained counsel and threatened to bring suit against BAH, claiming he wrongfully had been forced to relinquish his shadow stock units at retirement.

On July 31, 2008, The Carlyle Group purchased a majority interest in BAH's U.S. government consulting business (the "Carlyle Transaction"). BAH stockholders received $797 per share of common stock they held at the time of the transaction. The merger agreement between Carlyle and BAH required that shareholders electing to sell their common stock in the transaction execute a letter of transmittal (the "LOT"). The LOT provided in relevant part that

> "[t]he undersigned . . . hereby releases and forever discharges BAH and each of its Subsidiaries and Affiliates . . . from any and all claims . . . by reason of, relating to or arising from the fact that the undersigned is or was a stockholder of BAH or a holder of Company Shares, French Free Share Rights, Shadow Stock Unites or any other rights with respect to or with a value derived from or other interest in any equity in BAH."[3]

Kocourek executed the LOT, tendered his shares, and received $22 million in the Carlyle Transaction.

Five days after executing the LOT, Kocourek sued BAH in New York state court,

---

[2] "The SSP granted certain BAH officers rights to post-retirement payments that were designed to be equivalent to the proceeds they would have received had they participated in the SRP . . . . [U]nder the SSP, officers earned "shadow stock"—contractual rights that were equivalent, more or less, to stock options received under the SRP because the 'book value' of the shadow stock followed BAH's book value." *Boudinot*, 2012 WL 489215, at *7 (S.D.N.Y. Feb. 15, 2012).

[3] Defs.' 56.1 Stmt. ¶ 12.

3

asserting claims for breach of contract, unjust enrichment, fraud, and equitable fraud related to his shadow stock units. In December 2009, while that action was pending, Kocourek filed suit in this court based on his holdings of shadow stock units and BAH common stock. This Court consolidated his case with two others brought by former BAH officers which asserted similar claims. Plaintiffs filed a consolidated complaint in September 2010.[4] Defendants moved to dismiss the claims.

On February 15, 2012, the Court granted in part defendants' motion to dismiss. The only claims that survived the Court's opinion were those brought by Kocourek based on alleged violations of ERISA relating to the SSP.[5]

On September 10, 2012, the New York County Supreme Court heard oral argument on BAH's motion to dismiss Kocourek's second amended complaint in the state court action. Defendants argued that Kocourek's claims were barred by the release in the LOT. Kocourek argued that the release was unenforceable, or, in the alternative, that claims based on his shadow stock units were carved out of the release. The state court granted BAH's motion to dismiss, holding that the release was valid and barred Kocourek from litigating his claims based on BAH common stock or shadow stock units.

Kocourek filed a motion for clarification and reargument of the state court's decision as well as for leave to file an amended complaint. He sought to clarify whether the court had applied

---

[4] DI 14.

[5] *See Boudinot,* 2012 WL 489215 (S.D.N.Y. Feb. 15, 2012). The Court determined, *inter alia*, that the Stock Rights Plan ("SRP") was not an ERISA plan and therefore dismissed Kocourek's ERISA claims with respect to the SRP. The Court concluded, however, that because defendants had presented "no documentation about the SSP's terms," it could not determine at that point whether or not the SSP was an ERISA plan. *Id.*, at *7. It therefore declined to dismiss Kocourek's ERISA claims with respect to the SSP.

4

state or federal law in determining that the release barred his claims and also to amend his complaint to assert ERISA claims. The state court granted Kocourek's request for clarification and stated that it had applied state law in determining that the release barred his shadow stock unit-based contract claims. The court denied Kocourek leave to file a third amended complaint, holding that the ERISA claims Kocourek sought to add were duplicative of those he asserts here and that the state court would defer to this Court in the application of ERISA.

Defendants now move for summary judgment dismissing all of Kocourek's remaining claims in this action, arguing that (1) Kocourek is collaterally estopped to deny the validity of the release, as that issue was fully litigated and determined against him in the state court proceeding, and (2) even if the state court had not resolved the issue of the release, the plain language of the release makes clear that it bars Kocourek's remaining claims. With respect to the collateral estoppel argument, defendants contend that, even if the state court applied state law to determine that the release barred Kocourek's claims, the facts necessary to the state court dismissal are dispositive of the ERISA claims and they resolve this case. Defendants seek also partial summary judgment on its counterclaims for breach of contract, arguing that Kocourek's assertion of the released claims breached his obligation pursuant to the release not to bring suit.

Kocourek contends that he is not collaterally estopped with respect to the release because the state court applied state law to determine that the release barred his state law claims. Moreover, he argues that summary judgment on the validity of the release should be denied because material issues of fact exist as to whether Kocourek knowingly and voluntarily surrendered his rights to his with respect to his shadow stock units.

5

*Discussion*

*1.     Kocourek Is Collaterally Estopped to Challenge the Validity of the Release*

The preclusive effect of a New York state court's decision is governed by New York law.[6] In New York, issue preclusion "'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . . ' Furthermore, the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the first proceeding."[7]

Kocourek contends that he did not have a full and fair opportunity to litigate the validity of the release in the state court proceeding on the following theory:

> "New York common law follows the parole [*sic*] evidence rule and provides that an examination of the release must be made to determine if it is ambiguous. If no ambiguity is found, extrinsic evidence is incompetent and a defense that the Kocourek did not understand or intend to release is barred . . . For a release of ERISA claims to be effective, however, a fact-intensive investigation into the surrounding circumstances of its execution must be undertaken, which evidence is probative of understanding and intend."[8]

Because the state court decision "makes no reference to any issues extrinsic to the four corners of the [LOT], as the Federal standard of review requires," Kocourek argues, that court did not consider anything beyond the LOT as supposedly required under ERISA. Thus, he contends, he is not

---

[6] *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F. 3d 162, 191 (2d Cir. 2012) ("order to determine the preclusive effect of a state-court decision, a federal court must look to the law of that state").

[7] *L.A.M. Recovery, Inc. v. Dep't of Consumer Affairs,* 345 F. Supp. 2d 405, 410 (S.D.N.Y. 2004) (LAK) ( quoting *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487 (1984)).

[8] DI 75, at 5-6.

6

collaterally estopped from challenging the validity of the release in federal court.[9]

Defendants argue that "there is no substantive distinction between the arguments considered and decided by the state court and the Second Circuit law governing the release of ERISA claims."[10] Indeed, defendants that the parol evidence argument is a red herring: "[n]either Mr. Kocourek nor Defendants argued that the parol evidence rule should apply and, unsurprisingly, the state court did not mention it. Rather Mr. Kocourek argued, Defendants agreed, and the state court appeared to accept, that the applicable standard – irrespective of whether ERISA applied – was whether Mr. Kocourek knowingly and voluntarily executed the release."[11]

Kocourek is correct that, under New York law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms."[12] Accordingly, "[e]xtrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide . . . ."[13] By contrast, a "totality of the circumstances inquiry is appropriate in determining whether an individual waiver of the right to

---

[9] *Id.* at 7.

[10] DI 70, at 10.

[11] DI 77, at 3.

[12] *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569, 780 N.E.2d 166 (2002).

[13] *Id.* (A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion.) (Internal citation and quotation marks omitted).

7

participate in an ERISA plan is knowing and voluntary."[14] The Second Circuit has set forth a number of factors courts should consider when determining whether a release is knowing and voluntary, which will be discussed below.

Despite the fact that the state court applied state law in determining that the release barred Kocourek's state law claims, defendants are correct that collateral estoppel bars Kocourek from relitigating the validity of the release.

*First*, it is clear from the briefs submitted to the state court as well as the transcript of the hearing there that the parties argued and the court considered whether the release had been "knowing and voluntary" – the precise question courts must answer in determining whether a release of ERISA claims is valid. Indeed, Kocourek's counsel argued to the state court judge that the standard for determining whether a claim was validly released is "whether or not [one] knowingly, voluntarily signed a release and released away rights."[15] Thus, Kocourek tendered to the state court precisely the issue that he argues here is controlling.

*Second*, defendants are correct that neither in their briefs or at oral argument did the parties argue that the parol evidence rule applied to the state court's determination whether the release was valid. Nor did the state court indicate that it had limited its analysis to the four corners

---

[14] *Laniock v. Advisory Comm. Of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, at 1367 (2d Cir. 1991).

[15] Word Decl. [DI 72] Ex. 8 (Sept. 10, 2012 Transcript), at 30:4-8; 31:15-19; 32:12-19. Kocourek contended also that the language of the release was unclear, that he believed he had been obligated to sign the release, and that he was not given sufficient time to consider and sign the LOT – all arguments he now makes to this Court. And BAH argued – as it argues here – that Kocourek was a sophisticated businessman, that he had retained lawyers to pursue claims against BAH prior to executing the release, that the release was a precondition of the Carlyle transaction, and that Kocourek could have declined the transaction and exercised his appraisal rights if he had not wished to release his claims.

8

of the LOT. Thus, the issue of whether the release was knowing and voluntary was "clearly raised in the [state court] action" and, although the state court did not elucidate the bases for its holding, it necessarily was "decided against" Kocourek.[16] Kocourek certainly had a "full and fair opportunity to litigate the[] issue[]"[17] – indeed, he raised all the arguments regarding the validity of the release before the state court that he raises here.

Issue preclusion applies even where the claims litigated in the first proceeding were different from those litigated in the second.[18] Because the state court was presented with the same issues and was obliged to apply the same standard as the Court would apply here – whether the release was voluntary and knowing – its decision necessarily reflects a determination that Kocourek voluntarily and knowingly signed the release. That determination was essential to the result. Accordingly, Kocourek is collaterally estopped from denying that the release was knowing and voluntarily. As the release forecloses his remaining ERISA claims if it was knowing and voluntary, the existence of that estoppel is fatal to those claims.

*2. In Any Case, Kocourek Knowingly and Voluntarily Released His Claims*

Defendants would be entitled to summary judgment dismissing Kocourek's remaining claims even if Kocourek were not collaterally estopped on the issues of knowleged and voluntariness by the state court ruling.

"ERISA claims are validly waived as long as the waiver is knowing and voluntary

---

[16] *L.A.M. Recovery*, 345 F. Supp. 2d at 410.

[17] *Murphy v. Gallagher*, 761 F.2d 878, 883 (2d Cir. 1985).

[18] *Id.*

9

under the totality of the circumstances."[19]  In determining whether that standard has been satisfied, the Second Circuit instructs courts to "strictly scrutinize" the waiver and to consider the "totality of the circumstances," including:

> "1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) whether the plaintiff was represented by or consulted with an attorney, as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law."[20]

It has "emphasize[d] [however,] that any attempt to establish a checklist of all applicable factors or to insist on rigid adherence to such a list is foreclosed by the very nature of the inquiry."[21]

Kocourek does not deny that he was a sophisticated business executive, that he had retained counsel to sue BAH on the claims that were covered by the release before he signed that document,[22] that he signed the LOT that contained an acknowledgment that he had read and agreed to be bound by it, and that he received $22 million in exchange for executing the release.  But he

---

[19] *Yablon v. Stroock & Stroock & Lavan Retirement Plan and Trust*, 98 Fed. App'x 55, 57.

[20] *Laniock*, 935 F.2d 1360, 1368.  The Second Circuit in *Laniock* followed *Borman v. AT&T Communications, Inc.* 875 F.2d 399 (2d Cir. 1989), in which the court "identified a number of factors that were useful in determining whether the totality of the circumstances showed that the release of an ADEA claim was knowing an voluntary."  *Id.*  The *Laniock* court held that "these factors are equally relevant to a waiver of participation in an ERISA pension plan."  *Id.*  The Second Circuit subsequently has applied these factors to determine whether ERISA claims have knowingly and voluntarily been waived.  *See, e.g.*, *Yablon,* 98 Fed. App'x 55.

[21] *Id.* at 1368.

[22] Kocourek does contend that the LOT did not alert him that "he should consult counsel before signing."  DI 75, at 11.

nevertheless argues that the relevant factors weigh in his favor. The argument could not be accepted by any reasonable trier of fact.

*First*, Kocourek contends that the release's "principal deficiency is that the 'clarity' element is not met."[23] He argues that the pagination in the LOT was misordered[24] and that the language, typeface, capitalization, and placement of the release within the LOT did not make clear that Kocourek was releasing any *prior* claims with respect to his shares of BAH. Indeed, Kocourek argues that he believed he was releasing only claims that might have arisen from his tender of shares in connection with the Carlyle Transaction – not any claims based on earlier events.

This argument is flatly inconsistent with the clear terms of the release. It states that "[t]he undersigned . . . hereby releases and forever discharges BAH . . . from any and all claims . . . [or] cause of action . . . by reason of, relating to or arising from the fact that the undersigned is or was a stockholder of BAH . . . which the undersigned now has, *has ever had*, or may hereafter have against [BAH] whether or not relating to claims pending at . . . the Effective Time" of the merger.[25] Kocourek signed his name and "acknowledge[]d that [he had] thoroughly read th[e] Letter of Transmittal and agree[d] to be bound by the terms and conditions set forth [t]herein."[26] The fact that certain sentences in the LOT were in bold or capitalized is irrelevant. Kocourek certified that

---

[23] *Id.* at 9.

[24] Defendants note that Kocourek's "pagination" argument is based on the version of the LOT that was submitted by Defendants as an exhibit in this case, which indeed is misordered. "But Mr. Kocourek has submitted a blank copy of the Release, apparently from his own files, that shows the manner in which Mr. Kocourek received it and read it (*i.e.*, sequentially paginated)." DI 77, at 5.

[25] Word Decl. [DI 72] Ex. 5 (LOT), at 6 (emphasis added).

[26] *Id.* at 9. The release was part of the "Terms and Conditions" section of the LOT.

11

he read the entirety of the LOT – including the release – and agreed to be bound by it.

*Second*, Kocourek notes that he received the LOT on July 24, 2008. The LOT recommended that he submit the completed document the next day to avoid delays in payment, which he did. So he contends that one day was insufficient time for him fully to review and consider the terms of the LOT.

The LOT quite plainly did not *require* that Kocourek return the completed document, assuming he decided to return it at all, within one day of his having received it. It merely recommended that he do so in order to avoid delay in receiving cash for his stock. The LOT's instruction section stated (in bold, capital letters) that the company "recommend[s] that you submit your completed letter of transmittal as soon as possible, and no later than Friday, July 25, 2008. Delays in submitting your letter of transmittal may result in delays in your receipt of your merger consideration."[27] Moreover, even if the language were not entirely clear, and the Court is persuaded that it was, the day afforded to Kocourek was more than sufficient. Courts often have held that even a *few hours* is ample time within which to review a release.[28] And, as noted, in executing the LOT, Kocourek affirmed that he had read the entirety of the document, including the release. As a skilled businessman who had experience with business contracts, a day is a sufficient amount of time to review and consider the terms of the release. Even more so where, as here, the skilled businessman already had retained counsel to pursue claims against the company with which he was entering into

---

27

        *Id.* at 1.

28

        *See, e.g.*, *Evans v. Waldorf-Astoria Corp.*, 827 F. Supp. 911, 913 (E.D.N.Y. 1993) *aff'd*, 33 F.3d 49 (2d Cir. 1994) ("While plaintiff only had access to the agreement for a few hours, the time during which the agreement was under consideration was sufficient for plaintiff, through her attorney, to reject several offers as inadequate.").

a contract by signing the release.

*Third*, Kocourek contends that further discovery is necessary to determine who prepared the LOT and "what such bank intended respecting the release language."[29] He seeks discovery also into how and why defendants' attorneys "failed to apprise [Kocourek's counsel] of the 'release'" as they were communicating with him and failed to raise the release for approximately two and a half years while they were litigating Kocourek's claims in the state court. But Kocourek does not explain how discovery on either of these issues would alter the conclusion warranted here. The language of the release – and the fact that Kocourek read and signed it – is clear. Knowing which bank prepared it and what that bank subjectively may have intended would not alter that conclusion on the absence of a communication of any such intention to Kocourek.[30] And there is no claim that anyone communicated anything of relevance to Kocourek, other than the LOT itself, that is pertinent to this issue.

Kocourek is an experienced businessman. He was a senior officer of BAH. He has retained counsel and sued BAH in two different proceedings. He acknowledged that he read and agreed to the terms of the LOT, which clearly state that, by tendering his shares in BAH, he was

---

[29] DI 75, at 16.

[30] Moreover, defendants explain that "[t]he Release was not brought to the attention of Defendants' litigation counsel until after Mr. Kocourek filed claims relating to his common stock in 2010. By that time, the state court had granted Booz Allen's motion to dismiss Mr. Kocourek's state law claims, the First Department had affirmed that dismissal, and Booz Allen had answered Mr. Kocourek's remaining fraud claims. Booz Allen then raised the Release in its first responsive pleading to the next amended complaint Mr. Kocourek filed." DI 77, at 2 n.2. The state court rejected Kocourek's argument that the release was invalid because BAH did not raise it earlier in the case. And in this case, defendants raised the release in its first motion to dismiss the consolidated complaint. In its opinion on defendants' motion to dismiss, the Court concluded that it could not consider the release at the pleading stage because it was not alleged in the consolidated complaint. *Boudinot v. Shrader*, 2012 WL 489215, at \*9 n. 113.

releasing all claims against the company. Kocourek could have chosen to retain his claims and exercise his appraisal rights. But he preferred to cash in on the $22 million that was offered in exchange for the release and his shadow stock units. The suggestion that he should not be bound by the agreement he signed because he did not understand it, or because he did not have ample time to review it, would be meritless without regard to any issue preclusion.

*3.     Defendants Are Not Entitled to Partial Summary Judgment on Their Counterclaims*

Defendants have asserted counterclaims against Kocourek for breach of contract and breach of the implied covenant of good faith and fair dealing. They contend that Kocourek had a contractual obligation not to assert the claims he released when he executed the LOT.[31] By filing the lawsuits in state and federal courts "to pursue the exact claims that he released," Kocourek breached that contract, as well as the implied covenant of good faith and fair dealing.[32] Defendants therefore request that the Court enter judgment in their favor on the issue of liability on their counterclaims and "set a schedule for determining the damages owed to Defendants by" Kocourek.[33]

Kocourek does not dispute that he breached a contract and the covenant of good faith and fair dealing. He argues only that summary judgment should not be granted because defendants are not entitled to attorney fees under the American Rule.[34]

---

[31] DI 70, at 19.

[32] *Id.*

[33] DI 70, at 19.

[34] DI 75, at 20.

14

### A. Breach of Contract

To establish a claim for breach of contract under Delaware law,[35] defendants must establish "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the" defendants.[36] Defendants seek summary judgment only on the first two prongs .

Delaware courts consider "[a] release [to be] a form of contract with the consideration typically being the surrender of a claim or cause of action in exchange for the payment of funds or surrender or an offsetting claim."[37] By signing the release, Kocourek forfeited his claims. Kocourek argues, however, that he received no "additional consideration" from defendants for releasing his claims – that the $22 million represented the value of the shares he held at the time and that he was entitled to that amount whether or not he signed the LOT.[38]

Defendants counter that the Carlyle Group's offer was expressly contingent on the execution of the LOT. It is unreasonable to presume that the Carlyle Group would have paid the same amount for BAH's government practice if the shareholders had not extinguished their claims. And, had Kocourek chosen not to execute the LOT and tender his shares, his only option would have been to exercise his appraisal rights. Thus, in exchange for Kocourek's release of his claims,

---

[35] BAH is a Delaware corporation, and the merger agreement is governed by Delaware law. *See* Word Decl. [DI 72] Ex. 4 (Merger Agreement), at A-85. Kocourek does not dispute that Delaware law applies.

[36] *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003).

[37] *E.I. DuPont de Nemours & Co. v. Florida Evergreen Foliage,* 744 A.2d 457, 462 (Del. 1999).

[38] DI 75, at 14-15.

15

defendants paid Kocourek $22 million – an amount he would have received *only* upon execution of the LOT and release of his claims.

Notwithstanding that, under Delaware law, the release is considered a contract, and Kocourek breached the release by bringing his claims, the Court is not persuaded that defendants are entitled to summary judgment on their counterclaim for breach of contract. Defendants have failed to cite any cases in which a court has permitted a defendant to recover on this theory, and the Court is aware of only one. The Delaware Superior Court, in an unpublished opinion, wrote that:

> "A release is a type of a contract. In this case, the consideration for the three releases was Plaintitiffs' surrender of all claims and causes of action in exchange for the Defendant's repeated extension of the loan relationship with Plaintiff. Defendant bargained for and relied on Plaintiffs' promises not to sue. By the institution and maintenance of this action, Plaintiffs are in breach of the contracts to release Defendant from liability."[39]

But this Court finds more persuasive the view of the First Circuit, which held that "[a] release is an affirmative defense; it does not supply a defendant with an independent claim for breach of contract."[40]

### B. Breach of the Implied Covenant *of Good Faith and Fair Dealing*

The implied covenant of good faith and fair dealing inheres in every contract and requires "a party in a contractual relationship to refrain from arbitrary or unreasonable conduct

---

[39] *Edge of the Woods v. Wilmington Sav. Fund Soc'y, FSB*, CIV.A.97C-09-281-JEB, 2001 WL 946521 (Del. Super. Aug. 16, 2001).

[40] *Bukuras v. Mueller Group, LLC*, 592 F.3d 255, 266 (1st Cir. 2010); *see also Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 797 (7th Cir. 2005) ("The Release does not result in breach upon the filing of a suit. Instead, it provides [defendant] with an effective affirmative defense should a claim be raised.").

16

which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."[41] To state a claim for breach of the implied covenant, defendants "must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the" defendant.[42] "The implied covenant[, however,] does not apply when the subject at issue is expressly covered by the contract."[43] "The implied covenant only applies where a contract lacks specific language governing an issue and the obligation the court is asked to imply advances, and does not contradict, the purposes reflected in the express language of the contract."[44]

The language in the release is specific and clear. By signing the LOT, Kocourek released his claims against BAH. Defendants do not allege that Kocourek breached any implied obligation in the LOT by bringing his lawsuits. Their claim for breach of the implied covenant of good faith and fair dealing – "a limited and extraordinary legal remedy" – therefore fails.[45]

---

[41] *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (internal citation and quotation marks omitted).

[42] *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009).

[43] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009).

[44] *Alliance Data Sys. Corp. v. Blackstone Capital Partners V L.P.*, 963 A.2d 746, 770 (Del. Ch. 2009) *aff'd*, 976 A.2d 170 (Del. 2009).

[45] *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010).

17

*Conclusion*

For the foregoing reasons, defendants' motion for summary judgment dismissing plaintiff Kocourek's remaining claims and for partial summary judgment in their counterclaims [DI 69] is granted to the extent that the remaining claims asserted in the second amended complaint are dismissed and otherwise denied. The consolidated complaint is dismissed in all respects.

SO ORDERED.

Dated:   April 10, 2013

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)